**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| DENNIS A. RHODES, | : | |
| GERALD A. BENDER and | : | |
| EDWARD H. WOLFERD, JR. | : | |
| Plaintiffs, | : | Civil Action No. 09-01302-CDJ |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| ROSEMARY DIAMOND, | : | |
| FRANCIS S. HALLINAN, | : | |
| DANIEL G. SCHMIEG, | : | |
| LAWRENCE T. PHELAN, | : | |
| JUDITH T. ROMANO, | : | |
| FRANCIS FEDERMAN, | : | |
| THOMAS M. FEDERMAN, | : | |
| PHELAN HALLINAN & SCHMIEG, LLP | : | |
| FEDERMAN & PHELAN, LLP, | : | |
| Defendants. | : | |
| | : | |

## DEFENDANTS MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Defendants Rosemary Diamond, Francis S. Hallinan, Daniel G. Schmieg, Lawrence T.

Phelan, Judith T. Romano, Francis Federman, Thomas M. Federman, Phelan Hallinan &

Schmieg, LLP and Federman & Phelan, LLP (collectively the "Phelan Defendants"), by their

undersigned counsel, respectfully submit this Memorandum of Law in Opposition to Plaintiffs

Motion for Leave to Amend.  Defendants seek imposition of counsel fees against Michael D.

Hess and John G. Narkin for bad faith with respect to the instant filing, thereby needlessly and

vexatiously multiplying proceedings.

## I.     PRELIMINARY STATEMENT

In May 2009, the Defendants filed a Motion to Dismiss Plaintiffs Complaint, which,

*inter alia*, sought recovery under the Federal Fair Debt Collection Practices Act, 15 U.S.C.

§1692 *et seq.* ("FDCPA"), the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S.

§2270 *et seq.* ("FCEUA") and the Pennsylvania Unfair Trade Practices and Consumer

Protection Law, 73 P.S. §201 *et seq.* ("UTPCPL"), arising out of the alleged failure of the

Defendants, representing mortgage lenders, to amend proofs of claim in cases where refunds

were received by lenders from county sheriffs as a result of the cancellation of sheriff sales.

The motion to dismiss was based on the faulty analysis of the Plaintiffs in assuming (without

any legal support) that a lender or its attorneys have (1) a duty to amend a proof of claim for

post-petition payments or refunds (they simply do not) and (2) even to the extent that such a

duty existed, any rights with respect to the bankruptcy claims resolution process must be

asserted in bankruptcy proceedings themselves and that all non-bankruptcy causes of action

arising out of claims filed in Bankruptcy Court, such as those under the FDCPA or related state

statutes are preempted by the Bankruptcy Code.[1]

---

[1] The Plaintiffs' counsel, in their original Complaint, attempted to make this case a policy debate rather than a legal proceeding by lifting page after page of materials from consumer bankruptcy seminars about the malfeasance of the mortgage industry as if that were evidence. While commenting on the unfortunate waste of this court's time in Plaintiffs attempt to have this Court act as a mini-legislature, Defendants attempted to be professional and limited their response to the legal deficiencies inherent in the Plaintiffs' claims for relief. Even when Plaintiffs peppered their response to the motion with hyperbole and rhetoric concerning the alleged excesses of the mortgage industry and their counsel, Defendants provided a reasoned reply returning the Court's attention to the legal issues, rather than impertinent attacks on the parties. Unfortunately, Plaintiffs (actually their counsel) have been unable to control themselves and now have filed a document laced with outrageous personal attacks and slanders which should not be countenanced by the Court. While this will be discussed in greater detail below, it is respectfully submitted that at the point an attorney accuses opposing counsel of acting like house counsel to the mafia, it is time to stop such nonsensical hysteria. Analogizing the Phelan firm to the Gotti crime family and counsel for the Phelan firm as "house counsel" to the mob, simply is reprehensible.

Since the time the motion to dismiss was filed, there have been no fewer than three more cases holding that the Bankruptcy Code is a comprehensive statutory scheme for the resolution of claims in bankruptcy and that parties cannot assert claims under the FDCPA or related laws for acts arising in the claims resolution process. *See, B-Real, LLC v. Rogers*, 405 BR 428, 434 (M.D.La. 2009) ("To accept the proposition that the FDCPA created an alternative method to challenge a proof of claim in bankruptcy would open the floodgate for unnecessary and expensive litigation, replacing the simple procedure for dealing with an objection to the allowance of a claim. This cause of action would be totally contrary to the entire scheme established by congress to deal with creditor and debtor relationships"); *Simmons v. Roundup Funding, LLC,* 2009 WL 3049586 (S.D.N.Y. 2009) (at *3) ("This court agrees with the majority of courts that have considered the issue that a remedy for an objection to a proof of claim lies solely under the Bankruptcy Code and not the FDCPA"); *in re Jacques*, 416 BR 63, 79 (E.D.N.Y. 2009) ("Courts addressing the question of whether the filing of a proof of claim can give rise to an FDCPA claim have similarly concluded that the Bankruptcy Code precludes the assertion of a claim under the FDCPA").

Accordingly, with the underlying theory of their case in shambles, counsel for Plaintiffs either could attempt to have this Court rule and then seek appeal[2] or voluntarily dismiss the claim in the recognition that it simply does not state a claim for relief. Instead, Messrs. Narkin

---

[2] It is unlikely that in light of cases such as *in re Joubert*, 411 F.3d 452 (3d Cir. 2005) in which the Third Circuit held that the Bankruptcy Code does not provide a basis for an aggrieved party in bankruptcy proceedings to initiate claims for violations of the bankruptcy code in an independent district court action, that an appeal to the Third Circuit is likely to be successful on this issue. However, that is what an ethical attorney does when he does not believe the law is correct, rather than to engage in reprehensible personal attacks on all those whose efforts may have helped to create that state of the law. See, Proposed Amended Complaint, ¶146 (claiming that Defendants' counsel Bernheim and Bart somehow wrongfully persuaded Judge Bentz of the Western District to render a decision in their clients' favor) and 175 (f) (listing cases <u>successfully</u> defended by Messrs. Bart and Bernheim and making the absurd claim that their legal advocacy in those cases constitutes part of a "pattern of racketeering.").

and Hess, who ironically attack the Defendants' authority to act on behalf of their lender clients

when it is doubtful that either one of them ever discussed the merits of the purported amended

complaint with their putative clients, have chosen the nuclear option instead.  Not only are the

personal attacks on the Defendants and their counsel outrageous and without any legal

scholarship to recommend them, the document that has been filed simply is an unintelligible

stew of accusations, consumer legal conference publication excerpts, and conclusory legal

claims that simply do not follow the alleged facts.  Essentially, Plaintiffs seek to criminalize the

entire foreclosure industry, from the securitized mortgage pool trustees that buy and sell

bundles of mortgages, the servicers which are responsible for day to day transactions and

defaults, the attorneys who are engaged to bring such foreclosure actions and even attorneys

who are engaged to represent the foreclosure attorneys when they are the subject of strategic

attacks by attorneys representing the borrowers.

According to Plaintiffs' attorneys in this case, they are all part of a criminal scheme to

deprive borrowers of their housing, rather than part of a system that enables lenders to foreclose

upon properly perfected security interests in collateral upon default.  Simply stated, this theory

is lunacy and demonstrates a serious lack of understanding of the system of mortgage

securitization by which both borrower and lender live.  It is analytically deficient and legally

deficient as well.

First, the very acts which the Proposed Amended Complaint seeks to attack are the state

court foreclosure judgments which were entered against each of the named Plaintiffs as well as

the additional Plaintiff sought to be added in the Proposed Amended Complaint.  Plaintiffs

alleged that the judgments are either entered in favor of the wrong plaintiff or included inflated

fees and costs. However, those judgments may not be attacked in this forum and the court lacks subject matter jurisdiction to consider the proposed RICO claim under the *Rooker-Feldman* doctrine. Second, the Proposed Amended Complaint fails to state a viable RICO claim even were it to be considered. There are not <u>any</u> allegation of predicate acts of racketeering that injured any of the named Plaintiffs. The proposed RICO claim fails to allege <u>any</u> fraudulent acts that come close to meeting the standard of Rule 9(b) of the Federal Rules of Civil Procedure and it fails to allege the existence of a RICO enterprise that is anything more than loose innuendo. Plaintiffs do not even attempt to allege whether the RICO "pattern" is "open ended" or "closed ended" and provide the Court with any factual averments to support the existence of <u>any</u> such pattern. The RICO claim is therefore wholly frivolous and should not be the basis to permit these Plaintiffs' lawyers from continuing to churn the file, the object of which is nothing more to seek class action attorneys' fees in a case which was destined for dismissal. Other than the RICO claim, the claims remain the same - - Plaintiffs seek relief under the FDCPA and related state court statutes for alleged wrongdoing emanating from the Bankruptcy claims resolution process. Throwing a frivolous RICO claim in front of a prolix and impertinent screed of loose rhetoric without any legal foundation does not change the rot infecting that entire underlying structure. The original Complaint is wholly without merit and the Amended Complaint, to the extent one can get through the reprehensible innuendo, is even worse. No amendment should be allowed here, where the Plaintiffs already have delayed eight (8) months since the filing of the motions to dismiss and that motion should be ripe for resolution. The original motion to dismiss should be decided since the Amended Complaint is futile and has been filed in bad faith.

## II.    THE ASSERTION THAT THERE IS FRAUDULENT CONDUCT IF A FORECLOSURE ACTION IS BROUGHT IN THE NAME OF A FORMER SECURITIZED TRUSTEE IS WITHOUT MERIT

The only material allegation that has been added to the Proposed Amended Complaint is that for one of three named Plaintiffs, in his underlying foreclosure case, Wachovia Bank as trustee, the named Plaintiff, had sold its mortgage portfolio business to U.S. Bank, N.A. prior to the institution of the foreclosure action.  Proposed Amended Complaint, ¶115.  Interestingly, Plaintiffs do **not** deny that Wachovia remained the mortgagee of record with respect to the recorded mortgage of the Plaintiff, i.e., there had not yet been a formal assignment of the recorded mortgage.  Plaintiffs go on to recount the situation in New Jersey of a non-Plaintiff, Victor Ukpe, a New Jersey resident represented in the defense of a mortgage foreclosure case by South Jersey Legal Services (with whom Plaintiffs' attorneys obviously have worked closely) where the situation was reversed.  In Ukpe, it is alleged that the mortgage foreclosure action was brought in the name of the <u>purchaser</u> of a mortgage portfolio, even though the individual mortgage assignments had not yet been completed and therefore, according to the Ukpes, the purchasing trustee had no standing to bring a foreclosure action.  Proposed Amended Complaint, ¶¶137-139.

This precise issue, the ability of the mortgage industry to keep individual mortgages "caught up" with the proper securitized mortgage trustee when pooling and servicing agreements are sold, thereby transferring title to thousands of mortgages, was something the mortgage industry attempted to solve by establishing Mortgage Electronic Registration System or MERS.  In the MERS system, it was intended that most, if not all mortgages would be held in the name of MERS and assigned within the MERS system, thereby alleviating the need to do

paper assignments of each and every mortgage which might be transferred. Under a concerted attack by consumer legal attorneys, the MERS system was essentially broken as courts around the country held that foreclosure actions were required to be brought in the name of the record owner of title and not a mere nominee, such as MERS. This has led to situations where, occasionally, the filing of paper assignments trail the sale of pooling and servicing agreements among banks and other institutional lenders. As noted above, in <u>Ukpe</u>, the Plaintiffs allege that an assignment of a mortgage to a new pooling and servicing trustee was not properly perfected at the time of the institution of a foreclosure action. In this case, the Plaintiffs allege precisely the opposite - - that the foreclosure action was brought in the name of the former trustee even though the portfolio had been sold to a new entity, U.S. Bank. Frankly, borrowers' counsel cannot have it both ways - - either the consummation of a Pooling and Servicing Agreement transferring legal title to the mortgages is the *sine qua non* for standing to bring a foreclosure suit or the formal assignment recorded in the County of Recorder of Deeds Office is the essential act required to institute a foreclosure action.

In either event, the failure of the loan servicer (which Plaintiffs acknowledge is responsible for giving instructions to commence a foreclosure action) to know at a given time if a mortgage has been formally assigned **is not fraud. Rather, it is, at worst, an administrative error which is a potential defense to a foreclosure action. However, if the defense is not raised in the foreclosure action itself, it is foreclosed thereafter by the doctrine of *res judicata*, and additionally, it cannot be challenged in a federal court proceeding pursuant to the *Rooker-Feldman* doctrine.**

In their frenetic attempts to criminalize the entire mortgage industry, the Complaint fails to identify what the "fraud" consists of here. No representations were made to the Plaintiffs. No representations were relied upon by the Plaintiffs and no actions are identified which even remotely could be considered to be "mail fraud" - - a term so liberally and conclusorily scattered around the Proposed Amended Complaint. None of the named Plaintiffs attack the substantive right to foreclose as they all admit they defaulted on their mortgages. To attempt to create a "RICO enterprise" consisting of mortgage trustees, servicers, foreclosure attorneys and any attorney who represents those foreclosure attorneys simply is an effort to continue the attack on the foreclosure industry which has been ongoing through televised public relations efforts (*see*, Proposed Amended Complaint, ¶130), consumer legal strategy conferences (*see*, Proposed Amended Complaint, ¶¶29-57) and that is not law.

While Plaintiffs certainly are entitled to raise their defenses and counterclaims in the foreclosure actions or object to claims filed in bankruptcy proceedings, collateral attacks on final foreclosure judgments (which is the case in each of the three named plaintiffs and proposed additional plaintiff) or decisions overruling claims objections cannot be the basis of an independent fraud or RICO claim.[3]

In other words, faced with the impending dismissal of this action, these Plaintiffs desperately are seeking to have this court permit Plaintiffs' attorneys not only to ignore the

---

[3] Amazingly, the Proposed Amended Complaint alleges that the Wilentz firm attorneys' (who have now been added as part of the RICO "enterprise") success in *in re Abramson*, 313 BR 195 (Bankr. W.D.Pa. 2004) and the numerous cases which have followed Abramson somehow is part of a RICO pattern of racketeering. What Abramson held, as well as the numerous other cases cited in Defendants' original motion to dismiss, is that Plaintiffs' attorneys cannot, as a matter of law, seek to bypass unfavorable decisions by the bankruptcy courts and underlying foreclosure cases and attempt to collaterally attack them in another action. The instant proposed complaint is the "granddaddy" of all collateral attacks, as it arises from alleged wrongdoing in three cases all of which have gone to judgment against the Plaintiffs and in the case of *Bender*, have been the subject of unfavorable bankruptcy court decisions.

ramification of adverse findings against their clients and therefore hold that the state court and bankruptcy courts "got it wrong", a result barred by the *Rooker-Feldman* doctrine and the doctrine of *res judicata*, but to obtain a finding that the mortgage industry is organized crime and any attorney who represents the industry is "house counsel to the mob." This is nothing more than despicable and irrelevant innuendo. As noted above, the theory of the Proposed Amended Complaint is sheer lunacy. This court should cut this process off at the pass and issue its findings on the original motion to dismiss.

## III.   STANDARDS FOR THIS MOTION

Pursuant to Amended Rule 15(a) of the Federal Rules of Civil Procedure (effective December 1, 2009):

> (a). Amendment Before Trial.
>
> (1). *Amending as a matter of course.* A party may amend its pleading once as a matter of course within:
>
> (A). 21 days after serving it, or
>
> (B). If the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier.
>
> (2). *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave where justice so requires. Emphasis added.

Accordingly, under revised Rule 15(a), Plaintiffs may not amend as of right as the motion to dismiss was filed eight (8) months ago. While the standards for amending a complaint state that the right to amend "shall be freely given," the language "when justice so requires", have led to the elucidation of five grounds whereby the denial of a motion for leave to amend may be justified; undue delay, bad faith, dilatory motive, prejudice, and futility.

*Shane v. Fauver*, 213 F.3d 113, 115 (3d. Cir. 2000). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1434 (3d Cir. 1997). In assessing futility, the District Court must apply the same standard of legal sufficiency as applies under Rule 12(b)(6) of the Federal Rules of Civil procedure. *Id.* Accordingly, if a proposed amendment does not cure the deficiency found in the original Complaint, leave to amend may be denied. *Shane v. Fauver, supra*, 213 F.3d at 115. Bad faith may be inferred where the party seeking to amend knows or should have known of the facts contained in proposed amendment at the time he filed the earlier pleadings but failed to include them in the earlier pleadings. *Escobar v. Reid*, 2009 WL 3060426 (D.Col. 2009) (at *1); *Williams v. Savage,* 569 F.Supp.2d 99, (D.D.C. 2008). *Also see, Las Vegas Ice & Cold Storage Company v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir. 1990). Bad faith may also be inferred from the strategic or tactical goals sought to be accomplished in the timing of the proposed amendment. *PI, Inc. v. Quality Products, Inc.,* 907 F.Supp. 752, 765 (S.D.N.Y. 1995) (denying leave to amend when the timing of the motion revealed it was designed to avoid dismissal of the action). *Also see, Chitimacha Tribe of Louisiana v. Harry L. Laws Co.,* 690 F.2d 1157, 1164 (5th Cir. 1982) (noting that "it is improper to amend solely to gain a tactical advantage."). In this regard, the fabrication of a bogus RICO enterprise manufactured to seek disqualification of Defendants' counsel clearly is tactical and warrants denial of the motion in and of itself.

As demonstrated below, the Amended Complaint is every bit as meritless as was the original Complaint, in that it still relies upon the alleged failure to file amended proofs of claim upon receipt of sheriff refunds, <u>which simply are not required under bankruptcy law</u> and the

failure to credit those refunds to the punitive plaintiff's accounts. The new claim that

foreclosure judgments were wrongfully procured may not be attacked in this court. The

allegations of wrongdoing are wholly and maliciously false, for as discussed in the original

motion to dismiss, the plaintiffs never advanced the money for the sheriff's refund nor are they

entitled to the actual cash when it is returned. There <u>still</u> are no well pleaded averments that the

underlying accounting of the mortgages are improper in any way. More importantly, any such

questions of bankruptcy claims resolution are purely a matter of bankruptcy law and may not

be challenged in a subsequent district court action.

In addition to being barred by the *Rooker-Feldman* doctrine, the new RICO claim is

barred on the merits because it tries to utilize as its underlying foundation the alleged lack of

standing of lenders to bring mortgage foreclosure actions in state court foreclosure proceedings

which already have been decided. While Plaintiffs attempt to "poison the well" by alleging

facts relating to completely unrelated lawsuits having no relevance whatsoever to the instant

lawsuit, there is no basis in this Court to attack the standing of lenders to bring foreclosure

actions in state court. As held repeatedly by Pennsylvania Appellate Courts, standing is an

issue that is a waivable affirmative defense in a mortgage foreclosure action. Once the case is

decided, it is *res judicata* and may not be challenged in a subsequent proceeding.[4]

---

[4] The inability to understand the doctrines of claims and issue preclusion seem to be an ongoing problem for Mr. Hess, attorney for the Plaintiffs. In the *Bender* case in Bankruptcy Court, one of the three in which he raises complaints, he was the attorney representing *Bender* in the underlying foreclosure action and <u>he</u> failed to challenge the attorneys' fees sought in the foreclosure judgment. Subsequently, in the bankruptcy court he attempted to challenge the fees which had been contained in the judgment with an outrageous attack upon the Phelan firm similar to that asserted here. The Bankruptcy Court properly denied his objections on the basis that the fees included in the foreclosure judgment are *res judicata* and may not be challenged under the *Rooker-Feldman* doctrine in a federal court. *See*, Exhibit "A" hereto. Obviously, Mr. Hess <u>still</u> does not understand that he cannot challenge issues decided in a state court foreclosure judgment or in a bankruptcy court claims objection in a subsequent independent federal court action. However, rather than seeking to attack counsel for the lender and its co-counsel for their successful advocacy in a slanderous RICO action, maybe he should question his own

Given that, aside from even more pages of impertinent and prolix pleading than in the original Complaint, there is nothing new in the underlying factual allegations other than allegations that attorneys' fees, awards and standing issues <u>decided in underlying foreclosure actions</u> were wrongly decided. That does not come close to satisfying the racketeering or pattern elements of a RICO claim. Since the Plaintiffs simply are wrong on the issue of whether they may challenge claims procedures in a bankruptcy proceeding in a subsequent federal court action and because they cannot challenge either the standing of mortgagees or the assessment of fees in mortgage foreclosure actions in a subsequent federal court case, the amended complaint is wholly frivolous and futile. Moreover, bad faith is egregiously demonstrated in the disgraceful attacks upon counsel simply for successfully representing their clients and their assertion of a RICO claim which is completely absent of the necessary elements of such a claim. It is clear that the amendment is sought in bad faith. It should be denied and sanctions should be imposed upon the attorneys for the Plaintiffs pursuant to 28 U.S.C. §1927.

## IV.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE PROPOSED RICO CLAIMS

The RICO claims rest on one unalterable premise - - that the Phelan firm, on behalf of its institutional clients, obtained mortgage foreclosure judgments against Rhodes, Bender, Wolferd and now Giles that either were "unauthorized" or contained "false and misleading" information concerning foreclosure costs. Proposed Amended Complaint, ¶¶184-189. By means of the proposed RICO claim, the Plaintiffs on behalf of a putative class, seek a finding

---

diligence and ability to represent Bender in what he apparently concedes to be legal malpractice due to his own failure to challenge those fees in the foreclosure action. If inflated fees were charged, it was <u>his</u> obligation as attorney to Bender to challenge them in the foreclosure suit. He did not do so.

by this Court that the underlying foreclosure judgments were wrongfully entered and constitute acts of mail fraud and that subsequent bankruptcy claims filed on behalf of Phelan's lender clients based on the foreclosure judgments similarly were infected by mail fraud. Under Rule 12(b)(1), a Plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). The Court "may not presume the truthfulness of Plaintiffs' allegations but rather must evaluate for itself the merits of the jurisdictional claims." *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005).

The RICO claim makes the fundamental assumption that this Court may declare the foreclosure judgments against each of the named Defendants to have been wrongful because either they were brought on behalf of the wrong lender or included inflated fees and costs. However, this Court cannot do that. The *Rooker-Feldman* doctrine precludes lower federal courts "from exercising appellate jurisdiction over final state court judgments because such appellate jurisdiction rests solely with the United States Supreme Court. *In re Madera,* 586 F.3d 228, 232 (3d Cir. 2009), *quoting Lance v. Dennis*, 546 U.S. 459, 463 (2006). *See, generally, DC Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Company,* 263 U.S. 413 (1923). This doctrine applies only to the class of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005); *also see, Moncrief v. Chase Manhattan Mortgage Corp.*, 275 Fed. Appx. 149, 152 (3d Cir. 2008). As summarized recently by the Third Circuit:

> The *Rooker-Feldman* doctrine is implicated when, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996). Accordingly, claims are barred by *Rooker-Feldman* under two circumstances: (1) "if the federal claim was actually litigated in the state court prior to the filing of the federal action" or (2) "if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In re Knapper*, 407 F.3d [573, 580 (3d Cir. 2005)].
>
> Moreover, a federal claim is "inextricably intertwined" with an issue adjudicated by a state court when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief or (2) the federal court must take an action that would negate the state court's judgment. *Id.* at 581 (*quoting Walker v. Horn*, 385 F.3d 321, 330 (3d Cir. 2004)).

*In re Madera*, 586 F.3d at 232.

In this case, the Plaintiffs allege in their Proposed Amended Complaint that there was a grand RICO conspiracy to obtain wrongful foreclosure judgments and inflate foreclosure judgment charges **based on state court foreclosure judgment that are final and non-appealable.** The only way this court could find that any racketeering activity took place with respect to those judgments (and the frivolousness of the underlying claims on the merits are addressed below) is to necessarily find that the state court improperly entered those judgments in the first instance. This the court cannot do. The foreclosure judgments against each of the named plaintiffs in addition to the Giles plaintiff whom the Plaintiffs seek to add in the purported Amended Complaint <u>must</u> be accepted by this court as valid and are not subject to collateral attack. *Stuart v. Decision One Mtg. Co.*, 367 B.R. 541, 552-53 (Bankr. E.D.Pa. 2007); *in re Reagoso*, 2007 WL 1655376 (Bankr. E.D.Pa. 2007) (at *3). If the Plaintiffs have

any claims to be made that the Defendants acted on behalf of the wrong mortgage lender (which would be subject to correction in any event) it must do so by filing a petition with the court that entered the foreclosure judgment in the first instance.  As that has not occurred, <u>any</u> form of federal claim asserting wrongdoing in the foreclosure cases, whether be it constitutional or based on federal or state statutory law, is precluded because this court lacks subject matter jurisdiction to consider any claim which relies on a finding that a final non-appealable state court judgment was wrongful and constitutes the basis for some new constitutional or statutory claim.[5]  Since the entire basis of the RICO claim sought to be added by the Plaintiffs depends on a finding that the state court judgments against each of the named Plaintiffs was wrong, it may not be maintained as this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.

## V.    **THE PROPOSED AMENDMENTS ARE ALSO WITHOUT MERIT**

The proposed Count One of the Amended Complaint is an alleged violation of the RICO statute, 18 U.S.C. §1962(c).  In a remarkable 20 page diatribe (Proposed Amended Complaint, ¶171-197; pp. 77-97), there is not a **single** well pleaded allegation of an act of racketeering activity as set forth in 18 U.S.C. §1961(1).  Rather, there is a conclusory assertion that "defendants' use of the U.S. mail and interstate wire facilities to perpetuate defendants' schemes to inflate or fabricate foreclosure costs charged to homeowners or to prosecute foreclosure actions in the name of parties without legal standing to bring them . . ." constitutes mail fraud.  Proposed Amended Complaint, ¶189.

---

[5] Indeed, Judge Baylson just today entered an Opinion on this precise point in *Robinson v. Porges*, 07-1390 (E.D.Pa. January 29, 2010) (Exhibit "B" hereto at pp. 5-7 and fn.2 thereto).  (RICO claim is barred where Plaintiff asserts wrongdoing by lender in obtaining the underlying foreclosure judgment).

It is well settled that Section 1962(c) of RICO makes it unlawful "for any person employed by or associated with any enterprise . . to conduct or participate, directly or indirectly, in the conduct of such enterprise as affairs through a pattern of racketeering activity." 18 U.S.C. §1962(c); *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1411 (3d. Cir. 1993). Implicit in any civil action arising under 18 U.S.C. §1964(c) is the requirement the Plaintiff must allege injury <u>directly and proximately caused by the predicate acts of racketeering of which he complains</u>. *Lester v. Perquedanny,* 556 F.Supp.2d 473, 483 (N.D.Pa. 2008), *citing, Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 457 (2006). In order to plead the requisite proximate cause for a RICO claim, the Plaintiff must allege that (1) he or she was directly harmed by the Defendant's predicate acts, (2) that the Plaintiff suffered concrete damages and (3) whether alternate potential plaintiffs exist who could better address the harm alleged. *Allegheny General Hospital v. Phillip Morris, Inc.,* 228 F.3d 429, 443 (3d. Cir. 2000). The Plaintiffs allege as their only predicate act a generic violation of the Mail Fraud Statute, 18 U.S.C. §1341. Proposed Amended Complaint, ¶182. However, the purported "mail fraud" is nothing more than the filing of foreclosure actions on behalf of its lending clients (as to which there are judgments which preclude such a claim here), the payment of sheriff's deposits in connection with foreclosure sales (nothing wrong or deceptive with that) and the filing of proofs of claim and other bankruptcy claims forms allegedly without crediting the Plaintiffs' account for refunds (to which no specifics are pleaded nor is such a claim cognizable anywhere other than Bankruptcy Court). *See*, Proposed Amended Complaint, ¶¶185-188.

To properly allege mail fraud as a basis for predicate acts of racketeering a civil RICO suit, the Plaintiff must set forth three elements:

1.     The existence of a scheme to defraud involving money or property;

2.     That the Defendants used the mails in furtherance of the scheme; and

3.     That there was a specific intent to defraud, either by devising, participating in or embedding the scheme.

*State Farm Mutual Auto Insurance v. Grafman*, 655 F.Supp. 2d. 212, 227 (E.D.N.Y. 2009). A scheme to defraud, which must be pleaded with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, requires "a plan to deprive a person of something of value by trick, deceit, chicane or overreaching. *McNally v. United States*, 483 U.S. 350, 358 (1987); *AIU Insurance Company v. Olmecs Medical Supply, Inc.*, 2005 WL 3710370 (E.D.N.Y. 2005) (at *10).

Right away, it is clear that the attempt to assert that the conduct of litigation constitutes mail fraud is wholly without merit. Leaving aside the issue of *Rooker-Feldman,* the issue of "standing" of a trustee in a collateralized mortgage obligation is merely a "red herring". The borrower has all of his day to day contact with the mortgage servicer and the ultimate "holder" of the mortgage is a trustee for a securitized portfolio. These portfolios are bought and sold by means of "pooling and servicing agreements" and upon sale of a portfolio, ownership of the mortgage resides in the beneficiary under that pooling and servicing agreement, even if a formal assignment has not been executed. It is no "fraud" upon a borrower by a law firm for it to rely on information from a servicer to institute an action based on its computerized information if unbeknownst to it, a pooling and servicing agreement has transferred the mortgage to a new trustee. It is only a scriveners' error which requires a minor amendment, i.e., marking the judgment to the use of the assignee. It is not fatal to a foreclosure claim – *Deutsche Bank Nat. Trust Co. v. Kelly*, 2007 Phila. Ct. Com. Pl. Lexis 136 (2007) (any defect

relating to assignment of mortgage in foreclosure action is curable by amendment); *GMAC Mortgage, LLC v. Posey*, No. 2008-21 (CCP. Crawford Co., PA 2009) (Exhibit "C" hereto); *also see, U.S. Bank v. Brown*, No. 3351 EDA 2008 (Pa.Super. September 9, 2009) (Exhibit "D" hereto). There is certainly no intent to deceive and there is no harm to the defaulting homeowner as a substitution will be made of the proper mortgagee. There is no "trick, deceit, chicane or overreaching"; rather, to the extent where a mistake is made in identifying the trustee of a securities pool, it will and more importantly, it <u>can be</u> corrected. With respect to the mortgagors, however, <u>who admittedly have defaulted on their mortgages,</u> the servicer is within its rights to seek to collect the outstanding and defaulted loan. Accordingly, no claims relating to the identity of mortgage pool trustee in this case constitutes a basis for a mail fraud claim as a matter of law.

These alleged actions are not, as a matter of law, predicate acts of mail fraud. First of all, as the Phelan firm's clients obtained judgment in mortgage foreclosure against all three named Plaintiffs, Plaintiffs are barred under the doctrine of *res judicata* and the *Rooker-Feldman* doctrine from challenging the standing of the respective lenders to bring the lawsuit. The judgment is a conclusive bar against an assertion that the Phelan firm was not authorized to bring the action or the lender on whose behalf of the Phelan firm acted lacks standing. *GMAC Mortgage v. Posey, supra; U.S. Bank v. Brown, supra.* The second category of alleged "mail fraud" violations is the filing of proofs of claim with the bankruptcy court. Any such claims are barred because as with the FDCPA claims, the claims resolution process of the Bankruptcy Code provides a complete mechanicism for the resolution of claims disputes. In all three of the putative Plaintiffs' cases, claims disputes were resolved **against** the Plaintiffs. *See*, e.g.,

decision of Bankruptcy Court in *Bender* case (Exhibit "A" hereto), where the Court rejects Mr.

Hess' argument that he may challenge the results of state court proceedings. He now is trying

the same attack in this forum. Accordingly, an allegation that the proofs of claim were false

cannot be maintained. Moreover, any and all remedies for false proofs of claim would lie in

the bankruptcy court, not in a subsequent federal court proceeding. *See*, Defendants' Motion to

Dismiss the original Complaint. Finally, there is the alleged failure to file an amended proof of

claim crediting the debtor with the sheriff's refund. This is not a "mailing" in any event so it

cannot support a mail fraud claim. Moreover, as with the filing of proofs of claim, any remedy

lies solely within the Bankruptcy Code since it is a claims resolution issue. Accordingly, there

are no viable predicate acts of racketeering alleged in the Complaint.

## VI.    THE RICO "ENTERPRISE" IS LUDICROUS

Plaintiffs have attempted to plead an "associated in fact" enterprise identified as the

members of the Phelan Firm, Full Spectrum Services, Inc. and its employees, mortgage

servicers "including but not limited to Defendant Countrywide and Defendant Wells Fargo"

"non-defendant manufacturers marketers and distributors of client based case management and

invoice reporting systems", U.S.F.N., "a foreclosure industry trade association" and counsel for

PHS in this lawsuit and several others, Jonathan J. Bart and Daniel S. Bernheim, 3d, of Wilentz

Goldman & Spitzer, P.A. However, the only acts alleged to have been taken of which Plaintiffs

complain are those of the Phelan law firm alone in (1) instituting foreclosure cases against the

Plaintiffs, (2) filing proofs of claim, and (3) handling sheriff's refunds. None of the other

defendants are alleged to have taken any action directly or indirectly that affect the Plaintiffs.

An associated in fact enterprise must be meaningfully distinct from the entities that comprise it

such that the entities sought to be liable can be said to have controlled and conducted the

enterprise than merely its own affairs. *Reeves v. Ernst and Young*, 507 U.S. 170, 185 (1993);

*Crichton v. Golden Rule Insurance Company*, 576 F.3d 392, 399 (7th Cir. 2009). While there

well may have been business relationships between the Phelan firm and the other entities

purported to be part of the "enterprise", this is no more than the ordinary operation of a series

of business relationships required to foreclose on mortgages, administer loan accounts and

engage in legal proceedings. In other words, the actual claim "begins and ends" with the

actions of the Phelan firm itself, which themselves are completely innocuous and legitimate,

and cannot be attacked here since they resulted in state court judgments. This is insufficient as

a matter of law to state a RICO claim based on an associated in fact enterprise. *Crichton v.*

*Golden Rule Insurance Company, supra* at 400 (and cases cited therein).

## VII. THE PROPOSED AMENDED COMPLAINT DOES NOT ADEQUATELY ALLEGE A RICO PATTERN

To prevail on their RICO claims, Plaintiffs must prove that the Defendants engaged in

the conduct of an enterprise through a pattern of racketeering activity. The alleged predicate

acts of racketeering are alleged instances of mail fraud. However, to constitute racketeering

activity under RICO, the predicate acts must be related and must "amount to or pose the threat

of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel., Co.*, 492 U.S. 229, 239

(1989). Here, while mail fraud may be a predicate act, mailings are insufficient to establish the

continuity requirement of a RICO pattern unless they contain misrepresentations themselves.

*Dahlgren v. First National Bank of Holdrege*, 533 F.3d 681, 689 (8th Cir. 2008). To state a

RICO claim against a particular defendant based on allegations of mail fraud, the Complaint

must allege that the Defendant participated in at least two acts of mail fraud and meet the

rigorous pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Hall v. Tressic,* 381 F.Supp. 2d. 101, 109 (N.D.N.Y. 2005) (and cases cited therein). The Complaint must contain evidence of the content, time, place and speaker of each alleged mailing in the pattern. *Id.* The Complaint here fails to make any specific allegations of mailing other than the mailing of foreclosure complaints (which under the doctrine of *res judicata* must be deemed to be true and correct with respect to all three plaintiffs since judgment has been entered against them) and the filing of bankruptcy pleadings, which also were found to be true and correct. No other allegations exist other than conclusory and wide sweeping generalizations, mostly indicting the mortgage industry at large. This falls far short of the necessary elements to plead a RICO pattern. No attempt is made to identify this case as relying on an "open ended" or "closed ended pattern" or the length and duration of the pattern.

In short, the RICO claim is nothing more than a desperate effort to avoid what was a sure dismissal on FDCPA and related state law grounds. The RICO claim is wholly frivolous and should not be permitted as an amendment.

## VIII.   THE PROPOSED AMENDMENT SHOULD NOT BE PERMITTED AS IT IS PROPOSED IN BAD FAITH AND SANCTIONS SHOULD BE IMPOSED PURSUANT TO 28 U.S.C. §1927

As noted in the Standards section of this brief, a proposed amendment may be denied as a result of the bad faith of the parties seeking to amend. As discussed above, bad faith may be inferred where the party seeking to amend knows or should have known of the facts contained in the proposed amendment at the time he filed the earlier pleadings but failed to include them in the earlier pleadings and from the strategic or tactical goal sought to be accomplished in the timing of the proposed amendment. *See*, p. 10, *supra*. In this case, both aspects of the bad faith

description are fitting. **Everything** contained within the Proposed Amended Complaint was known or should have been known at the time of the filing of the original Complaint. All of the allegations regarding actions taken by the Phelan firm relate to foreclosure judgments which were obtained in 2007 or earlier and indeed, as noted in Exhibit "A", this is not the first time that counsel for Plaintiffs have attempted to collaterally attack the underlying foreclosure judgments in these cases. The allegations regarding alleged fees and costs were the subject of direct attack in the bankruptcy proceedings in the Bender case and there simply is nothing material which was "newly discovered" between the time of the filing of the initial Complaint and the Proposed Amended Complaint nine months later. There is no attempt to explain the delay or why the court would be burdened with an Amended Complaint long after the initial motion to dismiss was fully briefed.

While there is no excuse for the delay in filing the new RICO claim, the transparent motivation is stark and frankly, reprehensible. As the Plaintiffs frankly admit in paragraphs 175 through 176 and footnote 182 of the Proposed Amended Complaint, a direct goal of the amendment is to seek to disqualify the Phelan Firm's counsel, Daniel S. Bernheim 3d, Esquire and Jonathan J. Bart, Esquire of Wilentz Goldman & Spitzer, P.A. In footnote 182 at p. 82 of the Proposed Amended Complaint, Plaintiffs directly state their intention to seek disqualification of the Wilentz Firm. In that allegation is the infamous description of the Phelan Firm as akin to the "Gambino Crime Family" and the attempt to analogize Wilentz to its "house counsel", Bruce Cutler. Indeed, subsequent to the filing of its motion for leave to amend, one of Plaintiffs' attorneys sent the letter attached hereto as Exhibit "E" to the

managing partner of Wilentz.  In that letter, John Narkin, apparently Mr. Hess' new partner,

makes the outrageous statement:

> Having grown up in New Jersey and having attended law school
> here, I respect your firm's accomplishments and outstanding
> reputation in the legal community of our state.  That said, your
> firm's representation on behalf of Phelan Hallinan & Schmieg,
> LLC and Phelan Hallinan & Schmieg, P.C. dishonors its history
> and mocks the "commitment to make a difference" highlighted
> on its website.
>
> As stated at paragraph 175(f) and (n).182 of the Proposed
> Complaint, we do intend to file a motion to disqualify Daniel S.
> Bernheim 3d, Jonathan J. Bart and your firm from further
> participation in this litigation.  To avoid the unpleasantness and
> expense of litigation such motion, we ask you to voluntarily
> withdraw from representation of Phelan Hallinan & Schmieg and
> its partners in this action.

*See,* Exhibit "E" hereto.

The purported basis for seeking the disqualification of Messrs. Bernheim, Bart and the

Wilentz Firm is **solely** their representation of the Phelan Firm in a number of cases (all of

which have been successful) identified in paragraph 175(f) and the statement "In actively

assisting PHS in its professional misconduct and unlawful activities, Bernheim, Bart and the

Wilentz Firm have participated directly in the wrongdoing at issue in this litigation, thus

making Bernheim, Bart and other Wilentz Firm employees necessary and important fact

witnesses." Proposed Amended Complaint, ¶175(f).

Rule 3.7 of the Pennsylvania Rules of Professional Conduct, which are applicable

pursuant to Local Rule 83.6(iv) for the Eastern District of Pennsylvania, specifically prohibits

an attorney representing a client to act as a witness in a case.  The Courts have uniformly held

that the flip side of this rule also is applicable, i.e., that a party's adversary may not

manufacture claims against that party's attorney as a tactical method to seek that attorney's

disqualification and motions for disqualification alleging that an attorney is a necessary fact witness are looked upon with extreme disfavor. *Albert M. Greenfield & Co., Inc., v. Alderman*, 2001 WL 1355056 (CCP. Phila. CO. 2001) (at \*5); *George V. Wausau Ins. Co.*, 2000 WL 276915 (E.D.Pa. 2000) (at \*1) (motions to disqualify are disfavored since a party's choice of counsel is entitled to substantial deference); *Hamilton v. Merrill Lynch*, 645 F.Supp. 60, 61 (E.D.Pa. 1986). As held by one Court applying Rule 3.7:

> To hold otherwise [and permit a party alleging that an attorney is a fact witness to disqualify that attorney] would encourage abuse of the advocate-witness rule [Rule 3.7] for tactical reasons. If disqualification motions were routinely granted in such situations, the temptation to remove opposing counsel from the litigation would be great.

*Kehrer v. Nationwide Ins. Co.,* 1994 WL 805877 (CCP. Lanc. Co. 1994); *also see, Alderman, supra* at \*8.

Similarly, efforts to take depositions and other discovery of an attorney also are looked upon with extreme disfavor. *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), ci*ting, Hickman v. Taylor,* 329 U.S. 495, 513 (1947) (attempts to seek discovery from an adversary's counsel is highly discouraged and has been recognized as disrupting the adversary nature of our judicial system). Thus, where, as here, a party alleges that an opposing attorney is a "necessary" fact witness and seeks discovery from that attorney, such discovery is allowed only after the party seeking such discovery meets a three part test:

1.    No other means exist to obtain the information;

2.    the information sought is relevant and non-privileged; and

3.    the information is crucial to the preparation of the case.

*Shelton, supra*, 805 F.2d at 1327; *Boughton v. Kotter Corp.,* 65 F.3d 823, 828 (10th Cir. 1995);

*in re Linerboard Anti-Trust Litigation*, 237 F.R.D. 373, 385 (E.D.Pa. 2006); *Caruso v.*

*Coleman Company*, 1994 WL 613668 (E.D.Pa. 1994) (at *1). *Also see, Alderman, supra* at *8,

*citing* Rule 3.7. cont. at 9.

The <u>only</u> allegations which are used by Plaintiffs to support the claim that Messrs. Bart

and Bernheim are necessary witnesses, will be subject to discovery and therefore

disqualification are that Messrs. Bart and/or Bernheim have defended PHS in six other cases

and entered an appearance on behalf of Wachovia Bank, N.A. in the *Bender* bankruptcy matter

- - a case based on a foreclosure judgment in favor of Wachovia and where the objection to the

claim brought by Mr. Hess on behalf of Bender on the grounds that Plaintiff had the right to

challenge the state court foreclosure judgment was rejected by the Bankruptcy Court.  (Exhibit

"A" hereto).  In other words, the **only** basis for the attempt to force out Phelan's counsel is that

the Wilentz Firm has represented Phelan (successfully) in the past.  There is no allegation that

either Mr. Bernheim or Bart or the Wilentz Firm generally has had any relationship with the

Phelan firm (other than the irrelevant fact that Larry Phelan and Dan Bernheim were law school

classmates) <u>other than a legal representation relationship</u>.  Clearly, this is a clearly tactically

frivolous attempt to force the Phelan Firm to lose their counsel of choice without any

allegations that that counsel played any role other than counsel.  Any information which

Messrs. Bart or Bernheim would have involve disclosures of information to an attorney for the

purpose of obtaining legal advice and are therefore *per se* privileged. *See, Samson v. School*

*District of Lancaster*, 2008 WL 4822023 (E.D.Pa. 2008) (at *3).

In short, the addition of the Wilentz Firm as an (utterly conclusory) "member of the RICO enterprise," the attacks on those counsel simply for their advocacy of their clients' position and the announced intent to seek their disqualification as a result of filing the Proposed Amended Complaint demonstrates either a complete lack of understanding of the ethical relationship between an attorney and his client or a thinly disguised attempt to disrupt the relationship between Phelan and its attorneys for tactical reasons. This kind of bad faith should not and indeed, cannot be ignored. Given that the proposed RICO claim is a non-starter in that it depends upon this Court making determinations that the underlying foreclosure judgments were fraudulently obtained, which it cannot do, and the inclusion of character assassination of the Phelan firm, its clients and its counsel, together with outright irrelevant hyperbole and long-winded speeches, it is respectfully submitted that this constitutes the kind of bad faith which warrants the denial of the amendment and also warrants the imposition of sanctions pursuant to 28 U.S.C. §1927 for vexatious and unreasonable multiplication of proceedings, warranting the imposition of the excess costs, expenses and attorneys' fees reasonably incurred by the Phelan Firm for this reprehensible conduct. 28 U.S.C. §1927.

## IX.   **CONCLUSION**

For all the reasons set forth herein, it is respectfully submitted that the Proposed

Amended Complaint of Plaintiffs be denied as futile and proposed in bad faith and that

sanctions in the amount of costs and fees incurred by the Phelan Hallinan & Schmieg Firm in

the defense of this motion be compensated by Messrs. Hess and Narkin pursuant to 28 U.S.C.

§1927.

WILENTZ, GOLDMAN & SPITZER, P.A.

Date:  February 1, 2010                      BY:   /s/ Daniel S. Bernheim
                                                      Daniel S. Bernheim, 3d, Esquire
                                                      Jonathan J. Bart, Esquire
                                                      Attorneys for Defendants