IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD H. WOLFERD, JR., individually and on behalf of all others similarly situated<br>      Plaintiffs, | : | |
| v. | : | CIVIL ACTION<br>NO. 09-1302 |
| LAWRENCE T. PHELAN; FRANCIS S. HALLINAN; DANIEL G. SCHMIEG; PHELAN HALLINAN & SCHMIEG, LLP; FULL SPECTRUM SERVICES, INC.; and LAND TITLE SERVICES OF N.J., INC.<br>      Defendants. | :<br><br>: | |

**MEMORANDUM**

**Jones, J.**                                                                                                                                                **November 14, 2013**

    **I.    Introduction**

    Currently before this Court is Plaintiff Edward Wolferd's (on his own behalf and that of others similarly situated) Revised Amended Motion for Leave to Amend Complaint (Doc. No. 46). Plaintiff's proposed First Amended Complaint[1] alleges that Defendants violated the Racketeer Influenced and Corrupt Organizations Act, 42 U.S.C. § 1961 ("RICO") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). Plaintiff also seeks to bring a state law claim of Unjust Enrichment.

    For the reasons set forth hereinbelow, Plaintiff's Motion will be denied.

---

    [1] This Court notes that the proposed Amended Complaint currently before this Court is actually Plaintiff's ***third*** attempt to cure the defects of his originally-filed Complaint. (Doc. Nos. 22, 32, 46).

## II.   History

### a.   Factual Background

For purposes of assessing Plaintiff's Motion for Leave to Amend, this Court accepts as true all facts alleged by Plaintiff in his First Amended Complaint.[2] In March 2001, Plaintiff Edward H. Wolferd took out a mortgage on his home ($123,921) to secure a loan serviced by Wells Fargo Bank, N.A.. Plaintiff became delinquent on his mortgage payments and around December 2004, Wells Fargo referred the case to the law firm of Phelan Hallinan & Schmieg, LLP ("PHS") to initiate a foreclosure action against him. (First Am. Compl. ¶ 51). Accordingly, on December 15, 2004, PHS filed a foreclosure complaint in the Court of Common Pleas of Lancaster County, Pennsylvania. (*Id.* at ¶ 52). PHS later invoiced its client, Wells Fargo, for expenses the law firm incurred in obtaining title and lien information and using investigatory services. (*Id.*). Plaintiff did not file an answer to PHS's complaint and as a result, on February 17, 2005, PHS obtained a default judgment against Wolferd for $128,198.07. (*Id.* at ¶ 53).  PHS then filed a praecipe for a writ of execution and continued to bill Wells Fargo for the legal expenses incurred in this foreclosure process. (*Id.* at ¶¶ 53-54). Along with the usual expenses, PHS also billed Wells Fargo for the following additional expenses:

1. $75 for a "title bringdown" (Plaintiff claims this is an inflated charge for a significantly cheaper "quick search");
2. $325 for a "record owner lien certificate (Plaintiff claims this is actually a charge for an unnecessary, additional title report);

---

[2] Inasmuch as Plaintiff's proposed First Amended Complaint does not include copies of any of the documents referenced therein, this Court will rely upon said documentation as presented with his original Complaint and other related submissions.

  3. $170 for "service of the complaint" (Plaintiff claims this included an amount charged in excess of the actual cost of service);

  4. $5 for a "Soldiers and Sailors Civil Relief Act search" (Plaintiff claims this charge is fabricated);

  5. $125 for "notice of sale" (Plaintiff claims this charge is fabricated); and

  6. $100 for "tax certification/municipal lien certificate" (Plaintiff believes this is a recasting of a charge for conducting unnecessary "due diligence inquiry" of Plaintiff's whereabouts or is a duplicate charge for work included in other separately billed title charges.

(First Am. Compl. ¶ 61).

  On August 1, 2005, Plaintiff filed for Chapter 13 bankruptcy in an attempt to cure his default and reinstate his mortgage. (*Id.* at ¶ 55). On September 7, 2005, Wells Fargo, through PHS, filed its first Proof of Claim, followed by its Amended Proof of Claim on November 22, 2005. (Doc. No. 1-1 at 9, 11). On July 6, 2006, Plaintiff's Amended Chapter 13 Plan was confirmed and he proceeded to make the payments for nearly four years. (First Am. Compl. ¶ 55). On May 14, 2009, Plaintiff abandoned his Chapter 13 bankruptcy and it was dismissed. Up until this time, Plaintiff had made 44 of the 60 monthly payments of $300 required by his confirmed plan. (*Id.*).

  On September 11, 2009, to prevent losing his home, Plaintiff entered into a Loan Modification Agreement with Wells Fargo, thereby reinstating his mortgage. (First Am. Compl. ¶ 56). As part of the loan modification, he agreed to pay the "recoverable expenses" Wells Fargo was charged by PHS, which amounted to $3,015.50. (*Id.* at ¶ 57). Of the recoverable expenses, $1,375 was paid in cash and other $1,640.50 was capitalized into a new principal balance of $138,127.95. (*Id.*). The loan agreement indicates that these recoverable expenses may include costs of title,

appraisals, attorneys' fees, property preservation and property inspections. (Doc. No. 54-2 at 33).[3] Plaintiff claims that included in these "recoverable expenses" are the overcharges described above. (First Am. Compl. ¶ 56).

Plaintiff, on behalf of himself and all other similarly situated, alleges that Defendants PHS, the three partner attorneys, and the two affiliated servicers - Full Spectrum Services, Inc. and Land Title Services of N.J., Inc. ("FSS" and "LTS") - engaged in a practice of inflating foreclosure costs and billing for duplicative and unnecessary services in the course of mortgage foreclosure proceedings. (First Am. Compl. ¶ 1). Plaintiff further alleges that Defendants worked with loan servicers, such as Wells Fargo, to overcharge customers in an effort to make more money for the law firm and its partners. (*Id.* at ¶ 4). Plaintiff claims the loan servicers assisted in this scheme because the expenses originally billed to them by PHS would ultimately be covered by the Plaintiffs. (*Id.*).

        b.      **Procedural Background**

This lawsuit began on March 25, 2009 with a Complaint filed by Plaintiffs Dennis A. Rhodes, Gerald A. Bender and Edward H. Wolferd, Jr. - all Pennsylvania homeowners who filed Chapter 13 bankruptcy cases to save their homes. (Pl.'s Revised Am. Mot. For Leave to Amend Compl. ¶ 1). Plaintiffs alleged that Defendant PHS, who brought foreclosure actions against Plaintiffs, filed inflated bankruptcy claims that failed to account for sheriff refunds that PHS received after the bankruptcies were filed. (*Id.*).

---

[3] *See supra* n.1.

PHS filed a Motion to Dismiss in response to the Complaint. (*Id.* at ¶ 3). While the motion was pending, Plaintiffs filed a Motion for Leave to Amend their Complaint to add four additional defendants and to include "new bases for relief, including FDCPA and state law claims arising from PHS's and Lenders' attempts to collect debts of borrowers who had resolved their debts through loan modifications or distress sales without ever filing for bankruptcy." *Rhodes v. Diamond*, 433 F. App'x 78, 80 (3d Cir. 2011); Pl.'s Revised Am. Mot. For Leave to Amend Compl. ¶ 4. On July 14, 2010, this Court granted Defendant's Motion to Dismiss. (Pl.'s Revised Am. Mot. For Leave to Amend Compl. ¶ 4). Finding that amendment would be futile, this Court also denied Plaintiffs' Motion for Leave to Amend. (*Id.*).

Plaintiffs appealed this Court's ruling and the Court of Appeals for the Third Circuit determined that although this Court correctly found that Plaintiffs' claims regarding amendment of proofs of claim could not give rise to FDCPA or state law causes of action, remand was necessary for purposes of addressing the alternative claims for relief involving homeowners who modified their loans or held distress sales, *but did not file for bankruptcy*. *Rhodes v. Diamond*, 433 F. App'x 78, 80 (3d Cir. 2011) (emphasis added). Accordingly, the Circuit Court vacated this Court's Order and remanded the case with the following instruction: "[O]n remand, the parties and the District Court shall focus on claims asserted by *non-bankrupt* putative class members." *Id.* at 81 (emphasis added).

On August 19, 2011, Plaintiffs Dennis A. Rhodes, Edward H. Wolferd, Jr., Charles J. Giles, Diane Giles and Gerald A. Bender, Sr., filed a renewed Motion to Amend. On October 24, 2011, former counsel for Plaintiffs dismissed Charles and Diane Giles as plaintiffs, withdrew his

5

appearance in this case, and filed a separate action on behalf of these parties. (Pl.'s Revised Am. Mot. For Leave to Amend Compl. ¶ 7).

At a status conference on January 4, 2012, new counsel offered Plaintiffs Rhodes and Bender's consent to being dismissed from the case and informed this Court that an Amended Motion for Leave to File Amended Complaint would be submitted thereafter. (*Id.* at ¶ 9). On February 6, 2012, Plaintiff Wolferd filed his Amended Motion for Leave to Amend Complaint, along with a proposed Amended Complaint titled "First Amended Complaint" and in response, Defendants filed their opposition, which included a request for sanctions against Plaintiff for vexatious litigation. (*Id.* at ¶¶ 10-11). This Court denied Plaintiff's motion without prejudice but granted leave to file a revised Motion for Leave to Amend on or before October 9, 2012. (Doc. No. 44). In doing so, this Court emphasized that Plaintiff's his next proposed Amended Complaint must conform to the boundaries set forth by the Third Circuit on appeal and that the claims must abide by Fed. R. Civ. P. 8. (*Id.* at n. 1). This Court also denied without prejudice Defendant's motion for sanctions. (Doc. No. 44).

Currently before the court is Plaintiff's third request for leave to file an Amended Complaint based upon the following: (1) intended removal of five named defendants and the addition of two new defendants, affiliated vendor companies Full Spectrum and Land Title Services; (2) improved description of Defendants' alleged wrongful conduct that occurred outside of bankruptcy proceedings; and (3) the addition of a federal RICO claim and a state common law claim against the Defendants. Defendants vehemently object to this proposed filing and are again accusing Plaintiff of engaging in vexatious litigation.[4]

---

[4] Although Defendants requested to renew their Cross-Motion for Further Relief under 18 U.S.C. § 1927 Against Plaintiffs for Vexatious Litigation as part of the pleading, Defendants did not discuss

### III.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15; *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the court may deny leave if special circumstances – "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." – are apparent or declared.  *Foman*, 371 U.S. at 182; *Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008) (affirming the District Court's denial of leave to amend because Plaintiff's proposed Amended Complaint failed to state a claim under RICO and thus, would be futile).

"'Futility' exists when a Complaint, as amended, would fail to state a claim upon which relief could be granted." *Holst*, 290 F. App'x at 510 (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). In deciding the futility of an amendment, the court employs the same standard that governs a Rule 12(b)(6) motion to dismiss. "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Id.*

---

or argue this request in their briefing with regard to Plaintiff's most recent filings. Therefore, the same is rendered waived. *See Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 202-03 (3d Cir. 2004) ("[A]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court.").  In any event, this Court would not be inclined to grant same, due to the nature of the issues involved herein and the history of the case. *See Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 2013 U.S. Dist. LEXIS 114664, at *12-13 (D.N.J. Aug. 14, 2013) (circumstances of a case closely related to the one at bar did not warrant sanctions or costs because neither bad faith nor sanctionable conduct was apparent).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted). If the pleading would still not survive a motion to dismiss despite being amended, then the amendment would be futile and the Motion for Leave to Amend should be denied.

  IV.  **Discussion**
    a.  **Futility of Amendment**

As previously stated, the Third Circuit agreed with this Court's holding regarding the futility of the claims made by putative class members who filed for bankruptcy and thus instructed that, "on remand, the parties and the District Court shall focus on claims asserted by non-bankrupt putative class members." *Rhodes v. Diamond*, 433 F. App'x 78, 81 (3d Cir. 2011). While the wording of the instruction given by the Third Circuit Court may seem ambiguous when attempting to apply it to

this complex set of facts, the instruction is clear when also taking into account the plain meaning of language included elsewhere in the opinion.  The Appeals Court noted that the proposed amendment included "claims arising from PHS's and Lenders' attempts to collect debts of borrowers who had resolved their debts through loan modifications or distress sales ***without ever filing for bankruptcy***." *Id.* at 80 (emphasis added).  Said Court similarly stated that the "proposed amended complaint is broader than the initial complaint insofar as it alleges FDCPA and state law violations involving homeowners who refinanced their loans or opted for distress sales, ***but did not file for bankruptcy***." *Id.* (emphasis added).  Additionally, they expressed their "agreement with the District Court's holding regarding the futility of the claims made by putative class members who filed for bankruptcy." *Id.* at 81.  It is the opinion of this Court that if the Appeals Court intended to allow Wolferd as a plaintiff on remand, it would have distinguished parties who filed for Chapter 13 bankruptcy but later dismissed their bankruptcies from the others.

However, in an abundance of caution, this Court also looks to other sources to determine the meaning of the remand instruction.  In *In re Abramson*, the court recognized that one of the principal purposes of the bankruptcy court system is to adjudicate and conciliate all claims in one forum. 313 B.R. 195, 197 (Bankr. W.D. Pa. 2004) (ruling Plaintiffs claims under FDCPA and Consumer Protection law must be dismissed). The court held that "[o]nce a debtor is in bankruptcy court, the debtor's remedies to attack an allegedly inflated proof of claim are limited to those provided for in the Bankruptcy Code." (*Id.* at 197-98).[5]  This finding supports the position that the

---

[5] This Court is cognizant of Plaintiff's argument that the instant proposed Amended Complaint does not specifically challenge allegedly inflated proofs of claim.  However, the causes of action currently at issue cannot be construed as having arisen independently from the bankruptcy proceedings.

Third Circuit intended this Court, on remand, to focus on those proposed plaintiffs who had never filed for bankruptcy.

The holding in *Abramson* was adhered to in a related case in the District of New Jersey. In *Giles v. Phelan, Hallinan & Schmieg, L.L.P*, 901 F.Supp. 2d 509 (D. N.J. 2012), the Honorable Jerome B. Simandle presided over a similar case that Mr. and Mrs. Giles filed in the District of New Jersey after dismissing themselves from the matter currently pending before this Court. Along with another Plaintiff, Laurine Spivey, Plaintiffs in the New Jersey case asserted similar claims against many of the same Defendants involved in this case. Spivey was a Pennsylvania homeowner who filed for Chapter 13 bankruptcy but did not dismiss her bankruptcy case. The District Court of New Jersey dismissed all of Spivey's claims (including her RICO claim) with prejudice because, as bankruptcy filer, she "cannot challenge allegedly overinflated proofs of claims in district court, regardless of when the fees that led to those claims arose." (*Id.* at 523). While Plaintiff Wolferd attempts to re-characterize the allocation of allegedly inflated foreclosure costs as an injury occurring after the dismissal of his bankruptcy, he cannot escape the fact that the costs were included in the proofs of claim filed during his bankruptcy proceedings. As stated previously by this Court, Plaintiff's claims cannot convert this from a bankruptcy matter into one that would be proper before this Court.

Plaintiff's argument that the Third Circuit opinion did not concern Mr. and Mrs. Giles because they were only part of the proposed amendment and not parties to the appeal in this case, is incorrect. The Third Circuit, looking to the proposed Amended Complaint for reference, pointed out that this Court did not explicitly rule on the potential futility of claims by parties *that had never filed for bankruptcy*. While it is true that Mr. and Mrs. Giles were not parties to the appeal, the

plausibility of the proposed Amended Complaint (including all Plaintiffs' proposed claims in relation to their standing as individual plaintiffs who had or had not previously filed for bankruptcy) *was* what the Third Circuit Court was discussing when it gave its remand instruction to this Court.

Although Plaintiff Wolferd's claims cannot be adjudicated in this Court, he was not without a remedy in Bankruptcy Court. As noted in *Abramson*, "[t]he remedy for allegedly inflated claims is through the objection process and, if necessary, through Rule 9011 or the equitable powers of the Bankruptcy Court set forth in Section 105 of the Bankruptcy Code." 313 B.R. 195, 198 (Bankr. W.D. Pa. 2004); *see also Williams v. Asset Acceptance*, LLC (*In re Williams*), 392 B.R. 882, 886 (Bankr. M.D. Fla. 2008) ("The debtor does not need the FDCPA to protect itself from improper claims, as the Bankruptcy Code allows the debtor to file an objection. If this Court was to apply the FDCPA in this instance, debtors would be encouraged to file adversary proceedings instead of simply an objection to the creditor's claim, which is incredibly inefficient and undermines the process provided by the Bankruptcy Code."). Plaintiff had multiple opportunities to challenge the allegedly inflated costs; he could have objected to the proofs of claim in Bankruptcy Court and could have objected to the Order to Reassess Damages, but he failed to do either.[6]

---

[6] Plaintiff brings to this Court's attention the recent ruling in *Simon v. FIA Card Services, N.A.*, 2013 U.S. App. LEXIS 20403 (3d Cir. N.J. Oct. 7, 2013) for the proposition that the Third Circuit has overruled prior decisions prohibiting a person who filed for bankruptcy to bring claims under other federal statutes such as the FDCPA. However, as Defendants correctly point out, the *Simon* ruling was not as global as Plaintiff interprets it to be. Instead, it specifically noted that when the provision of the FDCPA at issue directly conflicts with bankruptcy laws, the FDCPA claim will not survive:

> The FDCPA requires a debt collector to include a notice of the debtor's rights within five days of the initial communication to the debtor. 15 U.S.C. § 1692g(a). The Bankruptcy Code's automatic stay provision prevents collection steps after a bankruptcy case is filed. A debt collector could not satisfy the FDCPA by including the notice of rights in a proof of claim, because "a communication in the form of a formal pleading" is not an "initial communication" under the FDCPA. If a debt collector had to send the notice of rights to a debtor in a pending bankruptcy case to

For the foregoing reasons, it is the opinion of this Court that the intention of the remand instruction was not to include assessment of claims by plaintiffs such as Wolferd who had filed for bankruptcy and later dismissed their claim. Rather, it was instructing this Court to focus on parties such as Mr. and Mrs. Giles *who have never filed for bankruptcy* but instead, resolved their debts through other means. Thus, Plaintiff's proposed amendment would be futile since Wolferd, the sole remaining named plaintiff, is not a proper plaintiff within the boundaries set forth by the Third Circuit on remand. Accordingly, Plaintiff's revised Motion for Leave to Amend Complaint must be denied.[7]

---

avoid an FDCPA claim, that communication could violate the automatic stay. To omit the notice in order to avoid violating the stay could violate the FDCPA. This conflict was a specific, and narrower, basis for finding that the FDCPA claim could not proceed.

*Id*. at *35-36.

Recognizing that irreconcilable conflicts between the FDCPA and bankruptcy laws do exist with regard to issues such as those involving proofs of claims, the court found that in the particular case before them where "FDCPA claims arise from communications a debt collector sends a bankruptcy debtor in a pending bankruptcy proceeding . . . there is no categorical preclusion of the FDCPA claims." *Id.* at * 38. Such is not the case here, where "the FDCPA claim raises a direct conflict between the Code or Rules and the FDCPA," preventing both from being enforced. *Id.*

[7] Even if Wolferd could be deemed an appropriate plaintiff, Defendants argue amendment would still be futile because the claims Plaintiff raises in his proposed amended complaint are precluded, both through issue preclusion and claim preclusion. In support of this argument, Defendants contend that the injury Wolferd alleges occurred prior to or during the Wolferd bankruptcy, and thus, Wolferd should have raised his claims in bankruptcy court and because he neglected to do so, he is barred from raising them here. (Defs.' Br. in Supp. of Objection to Am. Mot. to Amend Compl. 10-14).

Although both sides have dedicated a significant portion of their briefing to the issue of when the alleged injury occurred, the timing is ultimately rendered irrelevant. As pointed out by Judge Simandle in the District of New Jersey, "plaintiffs cannot challenge allegedly overinflated proofs of claims in district court, ***regardless of when the fees that led to those claims arose.***" *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F.Supp.2d 509, 523 (D. N.J. 2012) (emphasis added). Because Wolferd was previously in bankruptcy court, he cannot challenge the Costs included in the proofs of claims in this Court, regardless of their possible validity.

### b. Implications for Putative Class

Because Wolferd is not a proper plaintiff and his claims cannot be adjudicated by this Court, a determination must be made regarding whether or not the entire case must be dismissed for lack of representation.

A named plaintiff serves as the representative of the class and thus, must meet the following requirements: 1) must have questions of law or fact common to the class; 2) must have claims or defenses that are typical of the claims or defenses of the class; and 3) must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (quoting *In re Comm. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010)), *cert. denied,* 132 S. Ct. 1876 (U.S. 2012).

Here, Plaintiff would no longer have the same interests as other class members who have never filed for bankruptcy. Since he can no longer pursue his claims in this Court due to his lack of standing, he is prohibited from continuing to pursue litigation on behalf of the other potential class members in this case. *See Hildebrand v. Dentsply Intern., Inc.*, 264 F.R.D. 192, 197 (E.D. Pa. 2010) ("[A]n individual who lacks standing may not represent a class."); *duPont v. Woodlawn Trs., Inc.*, 64 F.R.D. 16, 20 (D. Del. 1974) ("[P]laintiffs must satisfy this Court that they personally have the requisite interest in the outcome of this litigation to seek relief on behalf of themselves and the class they purport to represent. Absent such a showing, the Court is duty-bound to dismiss the action as to both the class representatives and the putative class."); *Brier v. Luger*, 351 F. Supp. 313, 316 (M.D. Pa. 1972) ("A plaintiff cannot bring a suit on behalf of a class based upon a cause of

action in which he has no rights.).

Recognizing that "a court shall not dismiss an action for failure to prosecute it in the name of the real party in interest, if, within a reasonable time after an objection, the real party in interest ratifies, joins or is substituted into the action," the instant proposed Amended Complaint cannot be saved. *Hildebrand*, 264 F.R.D. at 198; *See* Fed. R. Civ. P. 17(a)(3).  This is so because despite the fact that Plaintiff became aware of the qualifications set by the Third Circuit at the time its ruling was filed back on June 2, 2011, no attempt was made to correct this one specific deficiency. To the contrary, Plaintiff argues for an alternative interpretation of the Third Circuit's remand instruction, claiming he is within those boundaries.  Plaintiff's knowledge of this standard and failure to meet it in his proposed Amended Complaint requires that the proposed class action be dismissed, rather than allow a substitute representative to replace Wolferd.  *See Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 504 (D. N.J. 2009) ("If the named plaintiffs bringing a [sic] class action claims do not individually have standing to bring those claims, the case should be dismissed prior to the class certification process.").

Because Plaintiff Wolferd lacked standing from the outset, the class has not yet been certified, and Plaintiff has *repeatedly* failed to cure the standing deficiency, dismissal of the entire action is warranted.

### c.    Remaining Claims in Plaintiff's Proposed Amended Complaint

Lastly, inasmuch as this Court was instructed by the Third Circuit to "focus on claims asserted by non-bankrupt putative class members" and no such members have been presented to this Court, the remaining RICO and Unjust Enrichment claims cannot survive.  *Rhodes*, 433 F. App'x at 81; se*e also Giles v. Phelan, Hallinan & Schmieg, L.L.P.,* 901 F. Supp. 2d 509, 523 (D.N.J. 2012)

(dismissing with prejudice a Plaintiff's RICO and state law claims because they were related to "allegedly inflated bankruptcy proofs of claims" that should have been addressed in Bankruptcy Court).

## V. CONCLUSION

For the reasons set forth hereinabove, Plaintiff's third Motion for Leave to Amend Complaint shall be denied.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II    J.